BATES et al., Appellants, v. CITY OF ST. LOUIS et al.

### Division One, December 12, 1899.

1. **Public Office:** SALARY. A public officer is not entitled to his salary by virtue of a contract, express or implied. The right to the salary which the statute or ordinance prescribes, exists as a creature of law, and as an incident to the office; and that salary is to be paid him whether or not he neglects his official duties, or performs services for which it is no fair compensation.

2. ——: ——: ABSENT ON PERSONAL BUSINESS. No deduction can be made from the salary of the mayor of St. Louis because of his absence from the city on private business. Nor is this holding in conflict with the clause in the city's charter that another officer during his absence shall be acting mayor and "receive the same compensation as the mayor."

Appeal from St. Louis City Circuit Court.—*Hon. Jacob Klein,* Judge.

AFFIRMED.

*Herman A. Haeussler* and *Charles S. Reber* for appellants.

(1) A taxpayer may maintain a suit in equity to enjoin the misappropriation of public funds. Hooper v. Ely, 46 Mo.

505; Hitchcock v. St. Louis, 49 Mo. 484; Newmeyer v. Railroad, 52 Mo. 81; Matthis v. Town of Cameron, 62 Mo. 506; Wagner v. Meety, 69 Mo. 150; Campbell v. St. Louis, 71 Mo. 106; Ranney v. Bader, 67 Mo. 476; Crampton v. Zabriskie, 101 U. S. 601; People v. Dyer, 90 N. Y. 404; Frame v. Felix, 167 Pa. St. 47; Barry v. Good, 89 Cal. 215; Nalle v. Austin, 85 Tex. 520. (2) The mayor of St. Louis is not entitled to the salary of his office while absent from the city on purely personal business. Section 17, article 4, charter of St. Louis.

*B. Schnurmacher* and *Chas. Claflin Allen* for respondents.

(1) An officer's right to his salary does not result from contract, either express or implied, between him and the state or the municipality by which it is payable. The salary belongs to him as an incident of his office. Mechem's Public Offices and Officers, sec. 855; Throop on Public Officers, sec. 443; Givens v. Daviess Co., 107 Mo. 673; Gammon v. Lafayette Co., 76 Mo. 675; Koontz v. Franklin Co., 76 Pa. St. 154; Fitzsimmons v. Brooklyn, 102 N. Y. 536; Walker v. Cook, 129 Mass. 579; Knappen v. Supervisors, 46 Mich. 22; City Council v. Sweeney, 44 Ga. 465. (2) So long as he is entitled to the office, the incumbent is entitled also to the salary, although during the same time he may have earned money in other employment. Throop on Public Officers, secs. 443 and 500; People v. Green, 5 Daly 254; Sleigh v. United States, 9 Ct. Ct. Rep. (U. S.) 369.

BRACE, P. J.—This is a proceeding in equity by injunction to restrain the city treasurer from paying the defendant Walbridge, at that time mayor of the city, his salary as such for three specified days in the month of March, 1896, during which time it is alleged in the petition he was absent from the city on business not pertaining to the business of his

office as mayor, and the duties thereof were performed by the proper officers designated by the charter, who received therefor the same salary that the mayor himself would have been entitled to receive. A demurrer to the petition was sustained and from the judgment thereon the plaintiffs appeal.

It is contended for the appellants that the mayor of St. Louis is not entitled to the salary of his office while absent from the city on purely personal businesss, and this contention is based on section 17, article 4 of the charter, which reads as follows:

"The president of the council shall perform the duties of mayor whenever and so long as the mayor, from any cause, is unable to perform his official duties. If the mayor and the president of the council are both absent from the city, or otherwise disabled from performing the duties of the mayor, the speaker of the house of delegates shall, for the time being, discharge the duties of said office, and either of them, while acting as mayor, shall receive the same compensation as the mayor."

It is well settled law that "a public officer is not entitled to compensation by virtue of a contract, express or implied. The right to compensation exists, when it exists at all, as a creature of law, and as an incident to the office. . . . . 'The salary belongs to him as an incident to his office, and so long as he holds it; and, when improperly withheld, he may sue for and recover it. When he does so he is entitled to its full amount, not by force of any contract, but because the law attaches it to the office.' " [Givens v. Daviess Co., 107 Mo. loc. cit. 608, 610; Fitzsimmons v. Brooklyn, 102 N. Y. 536; State ex rel. Chapman v. Walbridge, 153 Mo. 194.]

As is well said in Throop on Public Officers, sec. 500, quoting from ROBINSON, J., in People v. Green, 5 Daly (N. Y.), pp. 268, 269:

"The right of an officer to his fees, emoluments, or salary, is such only as is prescribed by statute; and while he

holds the office, such right is in no way impaired by his occasional or protracted absence from his post, or neglect of his duties. Such derelictions find their corrections in the power of removal, impeachment, and punishment, provided by law. The compensations for official services are not fixed upon any mere principle of *quantum meruit*, but upon the judgment and consideration of the legislature, as a just medium for the services which the officer may be called upon to perform. This may in many cases be extravagant for the specific services, while in others they may furnish a remuneration which is wholly inadequate. The time and occasion may, from change of circumstances, render the service onerous and oppressive, and the legislature may also increase the duties to any extent it chooses; yet nothing additional to the statutory reward can be claimed by the officer. He accepts the office 'for better or worse;' and whether oppressed with constant and overburdening cares, or enabled from absence of claim upon his services, to devote his time to his own pursuits, his fees, salary, or statutory compensation constitutes what he can claim therefor, and is yet to be accorded, although he performs no substantial service, or neglects his duties. . . . . The fees or salary of office are *'quicquid honorarium,'* and accrue from mere possession of the office."

Counsel for the appellants seem to concede that such is the law, but contend that the rule is changed by the provision of the section of the charter aforesaid which devolves the duties of the mayor upon the president of the city council or upon the speaker of the lower house of delegates as the case may be, during the absence of the mayor from the city, and provides that *he*, while acting as mayor, "shall receive the same compensation as the mayor," which, it is contended, ought to be construed to mean that such officer is to receive *not "the same* compensation *as* the mayor," but *"the* compensation *of* the mayor." In order to sustain this contention, we would

have to reconstruct this provision of the section by striking out the words "same" and "as," and inserting the word "of" in the place of the word "as" in the sentence.   We know of no canon of construction that would authorize us to do so. There is no ambiguity in the section.   Its meaning is expressed in clear and unmistakable language and we have no authority to add to, or to take from it, any of its terms.   The compensation of the mayor is thereby made the standard by which the compensation of the officer who in his absence acts for him, is to be measured, and nothing more.   It does not operate upon the compensation of the mayor at all, and it is not possible to give it any other force or meaning.   The argument in support of this contention might be well enough, if addressed to the law-making power.   Its force may have been appreciated by the framers of the former city charter, for it seems that in the charter of 1870, by sec. 9 of art. 5, it was provided that the president of the city council when discharging the duties of the mayor during his absence from the city, should receive "the compensation of the mayor," but certainly was not appreciated by the framers of the present charter who with this provision of the old charter before them, deliberately eliminated that feature thereof, and substituted therefor the present provision.   It was entirely within their power to so change the law, in this respect, and it is not within our power to reverse their action.   Our province, in the absence of ambiguity, is simply to construe the law as it is written.   And so construing it, we find nothing in this section requiring that any deduction should be made from the salary of the mayor, by reason of his absence from the city as charged in the petition.   The circuit court therefore committed no error in sustaining the demurrer, and its judgment thereon is affirmed.

All concur, except *Marshall, J.*, not sitting.